UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| BETHANY A. BERRY, | ) | |
| o/b/o Minor Child HNBV, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:15-cv-00146-JAW |
| | ) | |
| RSU 13 SCHOOL BOARD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION TO DISMISS**

As civil rights statutes are not intended to be a font of tort law, the Court grants a motion to dismiss a complaint that resonates in tort, not constitutional law, and dismisses without prejudice several state law claims to allow the plaintiff, if he wishes, to bring those claims in state court.

## I.   PROCEDURAL BACKGROUND

On April 21, 2015, certain Plaintiffs filed a complaint against the RSU 13 School Board and other named Defendants associated with the School Board or Oceanside High School within RSU 13. *Compl.* (ECF No. 1). On May 1, 2015, the Court granted a motion to amend the complaint to allow the Plaintiffs to file a new proposed complaint in the name of an adult plaintiff and the initials of the minor for whom the lawsuit was being brought. *Order* (ECF No. 11). On May 11, 2015, the

Plaintiff Bethany A. Berry filed an amended complaint in accordance with the Court's May 1, 2015 Order.[1] *Am. Compl.* (ECF No. 14).

On June 26, 2015, the Defendants moved to dismiss the Amended Complaint. *Defs.' Mot. to Dismiss* (ECF No. 16) (*Defs.' Mot.*). On July 17, 2015, the Plaintiff filed a response in opposition to the motion to dismiss. *Pls.' Reply with Incorporated Mem. of Law in Opp'n to Defs.' Mot. to Dismiss* (ECF No. 17) (*Pl.'s Opp'n*). On July 28, 2015, the Defendants filed a reply. *Defs.' Reply to Pls.' Reply* (*Defs.' Reply*).

## II.   THE AMENDED COMPLAINT

### A.   The Parties

The Plaintiff alleges that HNBV is a resident of Rockland, county of Knox, state of Maine, and that HNBV, a minor, is a student at Oceanside High School East (Oceanside). *Am. Compl.* ¶ 9. The Plaintiff alleges that Defendant RSU 13 School Board is the school board responsible for adopting policies for Oceanside in Rockland, Maine. *Id.* ¶ 10. The Plaintiff says that Defendant Steve Roberts was the Chair of the RSU 13 School Board and a member of the RSU 13 Policy Committee, that Defendant Kenneth Pride is a teacher and ski club co-coordinator at Oceanside, that Defendant Paul Desaulniers is a science teacher and ski club co-coordinator at

---

[1]    Although the parties refer to the Plaintiff as "plaintiffs," the Court generally refers to the Plaintiff in the singular because there is as a practical matter only one plaintiff, HNBV.  Bethany A. Berry is bringing the claim solely on the minor's behalf and is not making a separate claim in her own right.  Where appropriate, the Court has identified Ms. Berry separately.

In reviewing the statements in the Plaintiff's memorandum, Ms. Berry is probably not an appropriate party.  The Plaintiff's motion states that HNBV had his 18th birthday in October, 2014. *Pl.'s Opp'n* at 13.  Under Maine law, persons "18 years or over are declared to be of majority for all purposes."  1 M.R.S. § 73.  The general principle is that once a minor reaches the age of majority, the representative loses the right to sue on behalf of the former minor. *See Ju Shu Cheung v. Dulles*, 16 F.R.D. 550, 553 (D. Mass. 1954); *In the Interest of Bailey*, No. 2:05-383-CV, 2006 Tex. App. LEXIS 3771, at *5-6 (Ct. App. Tx., Second Dist. May 4, 2006).

Oceanside, that Defendant Lewis Collins was the RSU 13 school superintendent, that Defendant Sherman Hoyt is a member of the RSU School Board and the Chair of the RSU 13 Policy Committee, that Defendant Ilmi Carter is the school nurse at Oceanside, and that Defendant Elaine Ernest is an Ed Tech at Oceanside. *Id.* ¶¶ 11-17.

### B.   The Alleged Facts[2]

The Plaintiff alleges that on January 20, 2014, the RSU 13 Ski Club at Oceanside transported HNBV to Sugarloaf Mountain in Franklin County, Maine with the RSU 13 ski club from Oceanside East High School in Rockland, Maine. *Id.* ¶ 18. The Plaintiff says that his mother, Bethany A. Berry, wrote Oceanside to keep HNBV off the dangerous ski trials, but HNBV sustained multiple injuries and a concussion, causing him to defecate, lose consciousness, and to chip three of his teeth and dislocate a fourth tooth. *Id.* ¶ 19.   HNBV asserts that he exercised his Fourteenth Amendment procedural due process right to refuse medical treatment and declined to go in an ambulance. *Id.* ¶ 20.   When Mr. Pride arrived at the ski clinic, however, he touched HNBV with unclean hands and informed him that "You're going in the ambulance because I'm not getting sued." *Id.*   At the hospital, Mr. Desaulniers ordered HNBV to "Stop being such a big baby" and he humiliated HNBV by causing him to urinate in a prone position. *Id.* ¶ 21.

---

[2]      In considering a motion to dismiss, a court is required to "accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff []." *Sanchez v. Pereira-Castillo,* 590 F.3d 31, 41 (1st Cir. 2009) (quoting *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001)).

HNBV sustained a loss of consciousness and fecal matter, a contusion to the chest and back, dental trauma, tooth subluxation, a hematoma to the scalp and neck, a puncture wound to his tongue, and profuse bleeding from his mouth. *Id.* ¶ 22. HNBV was left in his own excrement for hours and underwent a number of x-rays and CT scans. *Id.* Also, he dislocated his tooth, pushing it forward. *Id.* ¶ 23. This tooth may never return to its original position. *Id.* The dislocated tooth pushed the surrounding teeth causing pain and weakness to those teeth. *Id.* HNBV also lost irreplaceable enamel on his teeth and he had never had a cavity on any of his permanent teeth. *Id.* In addition, HNBV was told that he had chipped teeth embedded in his tongue necessitating surgery of his tongue. *Id.* ¶ 24. Furthermore, HNBV sustained a range of injuries, from extreme sensitivity in his teeth and weight loss, to sensitivity to light, sound, and temperature due to the concussion. *Id.* ¶¶ 25-28.

The Plaintiff alleges that his treating physician had authorized a handicapped placard for HNBV and that when he arrived at school, the handicapped entrance was locked and Ms. Ernst told HNBV that he could not use the handicap entrance and would have to use the front door with bustling students pouring in. *Id.* ¶ 29.

The Plaintiff also says that during March and April 2014, he was prohibitively hazed and bullied for the injuries he had sustained on January 20, 2014. *Id.* ¶ 32. He claims that both Oceanside faculty and students verbally and physically hazed him for wearing sunglasses. *Id.* The Plaintiff alleges a pattern of violence that persists. *Id.*

4

### C.     The Theories of Action

The Plaintiff asserts the following theories of action:

(1) Count One—a 42 U.S.C. § 1983 claim for excessive force under the Fourth Amendment;

(2) Counts Two, Three and Four—42 U.S.C. § 1983 claims for the Defendants' failure to establish or maintain adequate written policies, procedures, and guidelines for Oceanside ski trips, governing the use of safety equipment, the constitutional right of a student to refuse treatment, the need to have an emergency contact when a student is injured, the failure to establish policies of proper decorum when a student is injured, the failure to have an use of force policy, the failure to have a written policy on responding to an injured student, the failure to establish a buddy system for the field trip, the failure to have a written policy on how to respond to a student's dental injury, the failure to have a written policy on the use of chest restraints, the failure to have a written policy on hypothermia for students attending a high school ski trip, the failure to have a written policy on basic first aid, the failure to have a written policy on proper handwashing procedures, the failure to have a written policy on how to ski within control, the failure to have a written policy on inspection of student ski equipment, the failure to have a written policy for maintaining RSU 13 employee electronic mail to respond to Maine public document requests, and the failure to have a written policy about the proper investigation of allegations of student hazing;

(3) Count Five—42 U.S.C. § 1983 claim for violation of a custom or policy of RSU 13 policy JJIF, Management of Concussion and Other Head Injuries;

5

(4) Count Six—42 U.S.C. § 1983 claim for violation of RSU 13 policy CHD for failure to inform the RSU 13 School Board of the need for policies set forth in Counts Two through Four;

(5) Count Seven—42 U.S.C. § 1985(3) claim because two or more Defendants interfered with HNBV's civil rights as described in Counts Two through Four;

(6) Count Eight—42 U.S.C. § 1983 claim for violation of procedural and substantive due process in the United States and Maine Constitutions for hazing and bullying HNBV and a 20-A M.R.S. §§ 6553-54 claim for hazing and bullying HNBV;

(7) Count Nine—5 M.R.S. § 4593, Maine Human Rights Act claim for wrongful denial of access to a handicapped entrance;

(8) Count Ten—14 M.R.S. § 6051, Maine equitable relief for violations of civil, constitutional and human rights, if there are no adequate remedies at law;

(9) Count Eleven—14 M.R.S. § 6051, Maine equitable estoppel for violations of civil, constitutional and human rights, if there are no adequate remedies at law;

(10) Count Twelve—42 U.S.C. § 1983 claim for refusal of Defendants to accept service of the Complaint without cause; and

(11) Count Thirteen—42 U.S.C. § 1983 claim for failure to establish a written RSU 13 policy on acceptance of service.

## III.   THE PARTIES' POSITIONS

### A.   The Defendants' Motion to Dismiss

In general, the Defendants say that this lawsuit is about a skiing accident that occurred during a school-sponsored ski trip and should be resolved as a tort claim, not a federal civil rights action.  *Defs.' Mot.* at 1.

### 1. The General Claims against the Entity Defendants

The Defendants first discuss the claims against the so-called "Entity Defendants," namely the School Board and the Policy Committee.  *Id.* at 6-7.  They note that the doctrine of respondeat superior has no application in § 1983 cases and that a public entity is responsible under § 1983 only if the challenged actions were "representative of an official policy or custom."  *Id.* at 6.  Citing *Bardanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989), the Defendants say that to prove a case against a public entity under § 1983, a plaintiff must show that (1) a municipal custom or policy is so widespread and established that the policymakers have knowledge of the practice, and (2) the custom or policy was the "cause of and the moving force behind the deprivation of constitutional rights."  *Defs.' Mot.* at 6.  As regards a failure to train allegation under § 1983, a plaintiff must show that there are "underlying identifiable constitutional violations attributable to official municipal policy" and that the public entity's failure to train is related to an "action pursuant to official municipal policy of some nature that caused a *constitutional tort.*"  *Id.* at 6-7 (quoting *Kennedy v. Town of Billerica*, 617 F.3d 520, 531-32 (1st Cir. 2010) (quoting *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 691 (1978)) (emphasis in original).

With this background, the Entity Defendants argue that the "failure to allege that the Entity Defendants followed a policy or custom is fatal to a claim for damages

against that entity or against an individual in an official capacity." *Id.* at 7.  The

Entity Defendants maintain that the Plaintiff has failed to point to "any identifiable

custom, policy, or practice which is violative of their constitutional rights" and the

failure to "adopt new policies and follow existing policies" is not a valid basis for

claiming a constitutional violation.  *Id.*

### 2.  The Claims against the Entity Defendants Based on Failure to Direct Claims

To maintain a claim against the Entity Defendants for a failure to direct, the

Entity Defendants say that a plaintiff must show "an actual policy of inadequate

training, where 'the need for more or different training is so obvious, and the

inadequacy so likely to result in the violation of constitutional rights, that the

policymakers of the [school] can reasonably be said to have been deliberately

indifferent to the need.'" *Id.* at 7 (quoting *Ms. K. v. City of S. Portland*, 407 F. Supp.

2d 290, 297 (D. Me. 2006) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

A plaintiff must also demonstrate "that a [school district] deliberately chose an

inadequate training program." *Id.* at 7-8 (quoting *Ms. K.*, 407 F. Supp. 2d at 297).

The Entity Defendants argue that the Plaintiff has not "identified any 'actual policy

of inadequate training' or any 'deliberate indifference,' nor could they." *Id.* at 8.  The

Entity Defendants say that the Plaintiff has only argued that "other policies *should*

have been adopted." *Id.* (emphasis in original).  The Entity Defendants claim that

the Plaintiff's failure to plead "any previous harm arising from an actual policy, or

any evidence of 'deliberate indifference' on the part of the Entity Defendants, is fatal

to their claim." *Id.*

8

### 3.   The Claims against the Individual Defendants in their Official Capacities

The Defendants turn to the claims against the so-called Individual Defendants in their official capacities.  *Id.* at 8.  Similarly, the Defendants maintain that the Plaintiff's "failure to assert that the Individual Defendants, in their official capacities, had an actual policy or custom of engaging in the allegedly unconstitutional behavior is fatal to their claims."  *Id.*  The Individual Defendants stress that the "failure of the Individual Defendants to notify the Board of a subjective need for a policy does not make a valid [§] 1983 claim."  *Id.*

### 4.   The Claims against the Individual Defendants as Individuals

The Defendants next address the claims against the so-called Individual Defendants.  *Id.* at 8-9.  The Defendants concede that the Plaintiff listed Steve Roberts, Sherman Hoyt, Lewis Collins, and Ilmi Carter in the caption of the Amended Complaint.  *Id.* at 8-9.  However, they assert that "none of the Plaintiffs' claims appear to address these defendants directly."  *Id.*  They argue that "[t]his is insufficient even under the minimal standards of notice pleading."  *Id.* at 9.

### 5.   The Substantive Due Process Claim

To maintain a substantive due process claim, the Defendants say, a plaintiff must allege conduct that is "so extreme as to 'shock the conscience.'"  *Id.* (quoting *Cummings v. McIntire*, 271 F.3d 341, 344 (1st Cir. 2001) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998)).  Here, the Plaintiff alleged that he was verbally and physically hazed for wearing sun glasses, and that Mr. Pride attempted to assault

him with projectiles, including tennis balls, and recruited high school students to offensively abuse HNBV.  *Id.* at 10.  The Defendants assert that, even if taken as true, these actions "do not rise to the level of 'conscious shocking.'"  *Id.*  The Defendants note that the Plaintiff does not allege that Mr. Pride's or any other of the Defendants' actions resulted in injuries to HNBV, but "rather were done for the purpose of 'assessing his injuries.'"  *Id.*  The Defendants claim that these allegations fail to state a substantive due process claim.

### 6.   The Procedural Due Process Claim

To state a claim for a violation of procedural due process, the Defendants say that a plaintiff must show "that (1) [he] was deprived of a protected property interest, and (2) the procedures attendant to that deprivation were constitutionally inadequate."  *Id.* at 11 (quoting *Garcia-Gonzalez v. Puig-Morales*, 761 F.3d 81, 88 (1st Cir. 2014)).  The Defendants argue that the Plaintiff failed to identify any property interest that was violated or that the school policies were constitutionally inadequate to protect such an interest.  *Id.*

### 7.   The Fourth Amendment Claim to be Free from Excessive Force

Citing *Graham v. Connor*, 490 U.S. 386, 396 (1989), the Defendants state that the standard for a Fourth Amendment violation is "objective reasonableness" and that this analysis requires a determination as to whether the force used to effect a particular seizure is reasonable and a balancing of the nature and quality of the intrusion against the countervailing governmental interests at stake.  *Id.* at 12. Focusing the Plaintiff's allegation that after HNBV refused medical treatment, Mr.

Pride touched him with unclean hands and told him that he was going to the hospital because Mr. Pride was not getting sued, the Defendants say that these allegations would not allow a reasonable person to conclude that any excessive force was used in transporting an injured student to a hospital.  *Id.*

### 8.   The Fourth Amendment Claim to be Free from Unreasonable Seizures

The Defendants note that the Plaintiff alleged that they violated his Fourth Amendment right to be free from unreasonable seizures.  *Id.* at 13.  The Defendants say that the Plaintiff's Fourth Amendment claim is based on his claim that the Entity Defendants did not have a policy in place to prevent Oceanside staff from transporting injured students to a hospital.  *Id.*  The Entity Defendants claim that this theory fails because there is no allegation that HNBV was restrained and there is no allegation that the Entity Defendants were aware that there was a custom or practice of doing so.  *Id.*  The other possible allegation is against Mr. Pride, but here the Defendants asserts that there is no basis to conclude that HNBV could have thought he was not free to leave and that he was required to go to the hospital following his ski accident.  *Id.* at 13-14.  The Defendants maintain that the other alleged violations in the Amended Complaint, such as being deprived of his free exercise and enjoyment of television, videogames and movies, are not rights cognizable under the Fourth Amendment.  *Id.* at 14.

### 9.   The First Amendment Claim of Access to the Courts

The Plaintiff complained that he was denied his First Amendment right of access to the courts because Mr. Pride and Mr. Desaulniers refused service of process.

*Am. Compl.* ¶ 34-A.  More specifically, the Plaintiff says that their refusal to accept service of process "created unnecessary service expenses of hiring the Knox County Sheriff's department to serve the Defendants."  *Id.*  The Defendants point out that Federal Rule of Civil Procedure 4(d)(2) provides a mechanism and potential sanction for the refusal to waive service of process.  *Defs.' Mot.* at 14-15.  Also, Defendants note that they waived service of summons on April 28, 2015, a week after the Plaintiff filed the original Complaint.  *Id.* at 15.  The Defendants say that based on these allegations and facts, there is no viable First Amendment claim.  *Id.*

### 10.    Unrecognized Constitutional Allegations

The Defendants say that the Plaintiff's allegations of being deprived of the right to enjoy television and videogames, of temporarily losing his ability to speak due to tongue injuries, and of being subjected to dietary restrictions do not amount to constitutional violations.  *Id.*

### 11.    The 42 U.S.C. § 1985(3) Claim

In the Amended Complaint, the Plaintiff asserts "a claim under Title 42 U.S.C. § 1985(3) because two or more of the Defendants interfered with the exercise and enjoyment of both Plaintiffs as described in other counts of this complaint."  *Am. Compl.* ¶ 43.  The Defendants quote the First Circuit as setting a standard for a § 1985(3) claim: "To state a claim under § 1985(3), a plaintiff must, among other requirements, allege the existence of a conspiracy intended to deprive an individual or class of persons of protected rights based on some . . . invidiously discriminatory animus."

*Id.* (quoting *Burns v. State Police Ass'n of Mass.*, 230 F.3d 8, 12 (1st Cir. 2000)).  The Defendants assert that the Plaintiff's due process claims must fail and that the Plaintiff has not asserted that he is a member of a protected class.  *Id.*  In addition, citing *Ms. K v. City of S. Portland*, 407 F. Supp. 2d 290, 301 (D. Me. 2006), the Defendants say that for § 1985(3) purposes, a school district and its employees are considered one entity and a single entity cannot conspire with itself.  *Id.* at 15-16.

### 12.   The State Claims and Supplemental Jurisdiction

In the Amended Complaint, the Plaintiff sets forth several state law theories of action: (1) Count 8—a bullying and hazing claim under 20-A M.R.S. §§ 6553-54, (2) Count 9—a Maine Human Rights Act claim under 5 M.R.S. § 4593, and (3) Maine constitutional claims.  *See Am. Compl.*  The Defendants concede that the Court now has pendent jurisdiction over the state law claims, but if the Court dismisses the federal claims, they urge the Court to dismiss the state law claims to allow them to proceed in state court.  *Defs.' Mot.* at 16-17.

### 13.   The Maine Civil Rights Act and Maine Human Rights Act Claims

On the assumption that the Court dismisses the federal civil rights claims, the Defendants urge the Court to do the so same for the state civil rights claims since the federal and state statutes are interpreted in the same manner.  *Id.* at 16.  Next, regarding the handicapped entrance issue, the Defendants say that the Plaintiff failed to allege facts that could trigger application of 5 M.R.S. § 4593.  *Id.* at 17.  They also point out that the Plaintiff's claim is time barred under 5 M.R.S. § 4611 and that

he failed to exhaust administrative remedies under 5 M.R.S.A § 4622(1). *Id.* at 17-18.

### 14. The Maine Bullying and Hazing Statutes

Turning to the Maine bullying and hazing statutes, the Defendants argue that, although each statute requires a school district to have policies and training programs that address bullying and hazing, neither statute provides a private cause of action for a student who is exposed to bullying and/or hazing. *Id.* at 18-19.

### 15. The State of Maine Constitutional Violations

The Defendants maintain that because the United States and Maine constitutions provide for similar rights, if the Court has dismissed the federal constitutional claims, it should do the same for the state claims. *Id.* at 19.

### 16. Qualified Immunity

The Defendants finally argue that the federal civil rights claims must be dismissed because the Defendants enjoy qualified immunity from suit unless the statutory or constitutional violations were clearly established at the time of the challenged conduct. *Id.* at 19-20. Here, the Defendants maintain, there was no clearly established constitutional right for the claims the Plaintiff is making. *Id.*

### B. The Plaintiff's Response

The Plaintiff filed a forty-six page opposition to the motion to dismiss. *Pl.'s Opp'n* at 1-46. Describing the Defendants' memorandum as "sesquipedalian," the Plaintiff says that HNBV "deserves his day in court." *Id.* at 1.

### 1. High School History

14

The Plaintiff says that HNBV attended a local Christian school for twelve years where racism was not tolerated, but when he entered the local public high school, he (and his sister) were subjected to a hostile racist environment with a low graduation rate for students of color and where he (and his sister) were subjected to racist incidents and comments.[3]  *Id.* at 1-2.

### 2.    Additional Facts

In the Plaintiff's response to the motion to dismiss, the Plaintiff sets forth a fourteen page recitation of additional facts, which add further detail to the Plaintiff's claims about what happened at the time of the skiing accident, what took place between the time the Plaintiff was transported down the mountain and the time he arrived at the hospital, what transpired at the hospital, and what occurred at the school following his return to Rockland and Oceanside.  *Id.* at 2-15.

### 3.    Standard of Review

In addition to mentioning the traditional standards for reviewing a motion to dismiss, the Plaintiff disputes whether the Supreme Court standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) applies to his case.  *Id.* at 17.  He contends that *Iqbal* is applicable only to *Bivens*[4] actions and not to civil rights actions.  *Id.*

### 4.    The 42 U.S.C. § 1983 Claims Against the Entity Defendants

---

[3]      The Plaintiff's opposition reads: "Rockland is a city where the Ku Klux Klan building still stands, while the Underground Railroad basement is boarded up with rats crawling through it, citing *Caffey v. Davis*, 54 N.C. 1, 1 Jones Eq. 1 (1853) & *Campbell v. Street*, 23 N.C. 109, 1 Ired. Law 109 (1840)."  *Pl.'s Opp'n* at 2.  These two North Carolina cases are shocking reminders of this Country's shameful racial history.  The cases concern the extent to which a decedent may transfer ownership of slaves by will, but they do not appear to have anything to do with the pending matter, nor do either of them say anything about the Ku Klux Klan and the Underground Railroad buildings in the city of Rockland, Maine.

[4]      *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

The Plaintiff maintains that he has stated a number of "cognizable claims" under § 1983 against the Entity Defendants.  *Id.* at 18.  These include:

(1) A claim that the "Entity Defendants had a policy or custom that denied students the 1st Amendment right to wear sunglasses in class, citing *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969)."  *Id.*  The basis for this case, the Plaintiff explains, was that the Plaintiff was wearing the sunglasses because he had suffered a concussion and had light sensitivity.  *Id.*

(2) A claim that a "single act or omission by the policymaker can be actionable."  *Id.* (citing *Pembaur v. City of* [*Cincinnati*], 475 U.S. 469 (1986)).

(3) A claim that the Entity Defendants had "failed to conduct a proper investigation into the student bullying and hazing against HNBV because RSU 13 Policy ACAD had insufficient standards on investigation procedures in student hazing and bullying incidences and patterns, in violation of the right to attend public school that is a secure, safe, and peaceful environment, citing MRSA Title 20-A § 6554(1) and the 1st, 4th, 9th, and 14th Amendments and Article 1 §§ 1, 4, 5, 6-A, 15, 19, and 24 and Article V § 12 of the Constitution of the State of Maine."  *Id.* at 19.  Citing *Beck v. City of Pittsburgh*, 89 F.3d 966 (3d Cir. 1996) and *Hampton Co. National Surety LLC v. Tunica County, Miss.*, 543 F.2d 221 (5th Cir. 2008), the Plaintiff argues that a "failure to conduct a proper investigation constitutes an unofficial policy or custom for purposes of § 1983."  *Id.*  The Plaintiff says

that "the police report(s) made by HNBV against student bullies show that there was a failure to conduct a proper investigation(s) of student bullying, oppression, and hazing against HNBV." *Id.* The Plaintiff asserts that "[Principal Thomas] Forti made a policy, custom, or administrative order for Pride and Desaulniers to stay away from HNBV, which Pride and Desaulniers violated many times." *Id.* Citing *Ford v. Brier*, 383 F. Supp. 505 (E.D. Wis. 1974), the Plaintiff says that "failing to establish adequate policies gives rise to civil liability," *id.* at 20, and that the Entity Defendants "failed to direct for failure to develop or implement policies regarding the external removal of excrement from an injured or temporarily disabled student, in violation of Article 1 § 5 Me. Const. and the 4th Amendment right to be free from excessive force under § 1983." *Id.* at 21. He argues that "[o]ne issue of fact is whether any of the entity defendants failed to direct for failure to develop, implement, or maintain policies and procedures regarding skiing safety in violation of Article 1 § 5 Me. Const. and the 4th Amendment right to be free from excessive force based upon the omissions and failures of school staff under § 1983." *Id.* at 20.

### 5.  The § 1983 Claims against the Individual Defendants Acting in Their Official Capacities

The Plaintiff states that he is "prepared to prove that there was a custom or policy of not following policies or engaging in the practices the Plaintiffs allege violated their constitutional rights." *Id.* at 21. The Plaintiff claims that the Individual Defendants "grossly, wantonly, and oppressively abused their official

capacity to torment, bully, and haze the Plaintiff HNBV, and the Plaintiffs are eager to prove this." *Id.*

### 6.   The § 1983 Claims Based on a Deprivation of Notice

The Plaintiff says that the Entity Defendants failed to "notify that Plaintiff HNBV and Plaintiff Berry prior to the school skiing activity at Sugarloaf of the following information under RSU 13 Policy JJIF, including a) The risk of concussion and other head injuries and the dangers associated with continuing to participate when a concussion or other head injury is suspected; b) The signs and symptoms associated with concussion and other head injuries; and c) The school administrative unit's protocols for: 1) Removal of the student from the activity when the student is suspected of having sustained a concussion or other head injury, 2) Evaluation, and 3) Return to full participation in school activities, in violation of the procedural due process right to be notified under the 14th Amendment through Article 6 § 2 of the United States Constitution and Article 1 § 6-A ME. Const., which was clearly established under RSU 13 Policy JJIF. . . ." *Id.* at 22.

### 7.   The § 1983 Claims Based on Failure to Investigate

Noting that the Plaintiff alleges inadequate investigative procedures regarding violations of RSU 13 policies by a number of named defendants, the Plaintiff argues that a "failure to conduct a proper investigation constitutes an unofficial policy or custom under § 1983 . . . ." *Id.* at 22-23.

### 8.   The § 1983 Claims Against the Individual Defendants Acting in Their Individual Capacities

The Plaintiff discusses the theories against Defendants Roberts, Hoyt, Collins and Carter as individuals. The Plaintiff says that Ms. Carter "showed deliberate indifference to Plaintiff HNBV when Ms. Carter would witness HNBV being bullied, oppressed, and hazed." *Id.* at 23. The Plaintiff alleges that Ms. Carter was "well aware that HNBV was being bullied, oppresse[d], and hazed," that she was "well aware of the light sensitivity of Plaintiff HNBV," that she "tried to deny HNBV the right to attend a public school that is safe, secure, and peaceful by trying to place HNBV into a § 504 program," that she "violated RSU 13 Policy JJIF by failing to provide and notify the Plaintiffs of information that is required to be given in accordance with RSU 13 Policy JJIF," and that she withheld homework from HNBV. *Id.*

The Plaintiff says that Mr. Collins "failed to abstain from lucre." *Id.* The Plaintiff explains that Mr. Collins found it lucrative "to resign in an attempt to be held unaccountable for failing to address the student issues of HNBV, including bullying, oppression, unlawful racial discrimination, human rights violations, hazing, and harassment." *Id.*

The Plaintiff says that "Mr. Collins, the Board, the Entity Defendants, Mr. Hoyt, Mr. Roberts, etc." each failed to direct by failing to make sufficient investigative procedures for allegations of student bullying and hazing under RSU 13 Policy ACAD." *Id.*

The Plaintiff concludes that "Mr. Roberts, Mr. Hoyt, Ms. Carter, and Mr. Collins should not be given a hall pass to be held unaccountable for their actions,

omissions, oppressions, and constitutional transgressions against the Plaintiffs. Halleluiah! Halleluiah! Halleluiah! Amen." *Id.* at 24.

### 9.    The Substantive Due Process Claim

The Plaintiff says that he was denied substantive due process because each Defendant "was deliberately indifferent and each defendant didn't care if the Plaintiff HNBV was being hazed and bullied and left in poop while physically restrained, denied access to a restroom, denied access to a handicap entrance, denied information under RSU 13 Policy JJIF, denied the right to be treated with human dignity, denied the right to attend a safe, peaceful, and secure public school, and all defendants were aware of this." *Id.* Citing *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), the Plaintiff asks that a jury be the finder of fact as to whether these actions "shock the [conscience]." *Id.* at 24-25.

### a.    The Case against Kenneth Pride

The Plaintiff alleges that Mr. Pride "has student bullies" and that he engaged in the "wrongful recruitment of bullies against HNBV." *Id.* at 25. He alleges that Mr. Pride "permitted Oceanside High School students to skip class to play tennis on the condition that they torment the Plaintiff HNBV." *Id.* He says that Mr. Pride would provide his bullies "a verbal hall-pass to roam the hallways of Oceanside high school if the bullies were mean to HNBV." *Id.* He quotes Nate Ray, who he alleges was a "recruited bully" of Mr. Pride, as saying that Mr. Pride "let's us do whatever we want" and that Mr. Ray told HNBV that "You have to face your fears and play tennis with us." *Id.* He alleges that Mr. Pride used "psychological positive

20

reinforcement" with a brick of dark chocolate and trips to Dunkin Donuts. *Id.* The Plaintiff says that leaving HNBV in poop "shocks the [conscience]." *Id.* He names the bullies Mr. Pride recruited as Samuel Crockett, Ryan Allandar, Caleb Jacob, Cameron Gnosini-Rubenstein, Zachary Peaco, Stephen Kennedy and he also names Lucas Benner as a teacher who shined a flashlight in HNBV's eyes. *Id.*

### b.     The Case against Mr. Pride and Other Defendants

The Plaintiff claims that "the alleged actions and omissions of Mr. Pride and all other Defendants resulted in the injuries of HNBV." *Id.* at 26. "The inability to speak for long durations shocks the [conscience] due to tongue injuries made as a result of the actions and omissions of Mr. Roberts, the Entity Defendants, Mr. Hoyt, Ms. Carter, Mr. Pride, Mr. Collins, etc." *Id.* The Plaintiff expands his allegations to include the failure to respond when he was: (1) left in poop while physically restrained, (2) when he was assaulted with a yardstick, (3) when he was called a racial epithet, (4) when people shined light into his sensitive eyes, (5) when he was bullied for wearing sunglasses and a hat, and (6) when he was denied access to a restroom. *Id.*

### 10.     The Procedural Due Process Case

The Plaintiff identifies the source of his "protected liberty interest" under the Due Process Clause, which he says consists of "being wrongfully restrained in poop for hours, being denied access to a restroom, and being denied the removal of poop." *Id.* at 27. He also asserts that he was denied his "right to refuse medical treatment," which he says is "a clearly established procedural due process right under *Cruzan v.*

21

*Director, Missouri Dep't. of Health*, 497 U.S. 261 (1990)." *Id.*  He also says that the Defendants "failed to notify that Plaintiff HNBV and Plaintiff Berry prior to the school skiing activity at Sugarloaf of the following information under RSU 13 JJIF, including a) The risk of concussion or other head injuries and the dangers associated with continuing to participate when a concussion or other head injury is suspected; b) The signs and symptoms associated with concussion and other head injuries; and c) The school administrative unit's protocols for 1) Removal of the student from the activity when the student is suspected of having sustained a concussion or other head injury, 2) Evaluation, and 3) Return to full participation in school activities, in violation of the procedural due process right to be notified under the 14th Amendment though Article 6 § 2 of the United States Constitution, which was clearly established under RSU 13 Policy JJIF."  *Id.* at 28.

In response to the Defendants' discussion of the First Circuit's *Garcia-Gonzalez* case, the Plaintiff argues that it is "bad law."  *Id.*  He explains that the Plaintiff in *Garcia-Gonzalez* "filed an unsuccessful § 1983 procedural due process claim instead of filing a more appropriate federal contractual civil rights claim under Title 42 U.S.C. § 1981 of the Civil Rights Act of 1991 when the main issue of the case of [*Garcia-Gonzalez*] dealt with bids for government contracts, which is an irrelevant issue to the suffering of HNBV."  *Id.*

The Plaintiff expresses surprise that the Defendants cited *Godin v. Machiasport* because, in his view, the plaintiff in *Godin* had committed a constitutional violation of a student by "physically restraining and abusing a student

in a classroom in violation of the 4th Amendment rights of a student." *Id.*  The Plaintiff "analogizes the sins of Pat Godin against a student to the constitutional transgressions and unlawful use of physical restrain[t]s by Mr. Pride, Mr. Desaulniers, and the other Defendants against HNBV." *Id.*

### 11.   The Fourth Amendment Claim

The Plaintiff says that "all the injuries that the Plaintiff HNBV sustained during the ski incident were the result of the unlawful use of excessive force by each defendant." *Id.* at 29.  Citing *LaMarche v. Costain*, 225 F. Supp. 2d 83 (D. Me. 2002), among other cases, the Plaintiff argues that the "issue is whether the excessive force could have been preventable or avoidable." *Id.*  The Plaintiff claims that "an improper level 3 and level 4 escalation of force was used against HNBV as a result of the actions of" the Defendants.  *Id.*

Citing *McCann v. Walmart Stores, Inc.*, 210 F.3d 51 (1st Cir. 2010), the Plaintiff complains that he was "most certainly in physical restraints for over six hours and denied the right to use a restroom where the Plaintiff HNBV was excessively forced by Mr. Pride and Mr. [Desaulniers] to lie in his own excrement." *Id.* at 29-30.  He says that in *McCann*, "this federal court awarded damages to the Plaintiff McCann who had been denied access to a restroom for 40 minutes." *Id.*

The Plaintiff contends that "the excessive force that the Plaintiff HNBV endured could have been presentable or avoidable if the Defendants had sufficient RSU 13 policies, including, but not limited to a RSU 13 policy that required that all students wear helmets and other safety equipment while skiing." *Id.* at 30.  He also

points out that in soccer games the players are required to use mouth guards, but not on ski trips. *Id.* He stresses that the claims against the Defendants are based on their actions and their omissions. *Id.*

### 12. The Fourth Amendment Seizure Claim

Citing *United States v. Mendenhall*, 446 U.S. 44 (1980), the Plaintiff says that his Fourth Amendment seizure claim is based on the fact that he asked to leave the ski clinic but that Mr. Pride denied him the freedom to leave. *Id.* at 32. He notes that he was in "physical restraints for over six hours and was denied the right to use the restroom where the Plaintiff HNBV was excessively forced by Mr. Pride and Mr. Desaulners to lie in his own excrement." *Id.* He argues that all of this "could have been preventable or avoidable if the Defendants had sufficient RSU 13 policies." *Id.* He again cites *McCann* in support of his contentions. *Id.*

### 13. The First Amendment Claim of Access to the Courts

The Plaintiff first rejects the Defendants' claim that *Lewis v. Casey*, 518 U.S. 343 (1996) supports their motion to dismiss his First Amendment claim. *Id.* at 33. He says that the *Lewis* case in which the Supreme Court held that there is an "actual injury" requirement for First Amendment access to courts claims applies only to prisoners. *Id.* Moreover, he asserts that even if the "actual injury" requirement applies to him, the term does not refer to "physical injury," but to other types of injury such as the reading of confidential legal material and denial of access to a prison law library. *Id.* (discussing *Cody v. Weber*, 256 F.3d 764 (8th Cir. 2001) and *Benjamin v. Kerik*, 102 F. Supp. 2d 157 (S.D.N.Y. 2000)). Lastly, the Plaintiff claims that he has

suffered an "actual injury" by being required to hire the Knox County Sheriff's Department to serve the Defendants and that their refusal to waive service of process was in bad faith. *Id.* at 34. He cites a series of cases that he claims supports his position. *Id.*

### 14.   The Constitutional Right to Enjoy Video Games

The Plaintiff objects to the Defendants' attempt to "belittle [his] long suffering" by using the enjoyment of video games as "a red herring logistical fallacy to distract the court from other substantive claims in this case." *Id.* He explains that his reference to his enjoyment of television, videogames and movies was "claimed as an example of the result of the light sensitivity that the Plaintiff HNBV had sustained from his skiing concussion." *Id.* At the same time he says that the "right to play video games and watch television has been clearly established since 2011, citing *Brown v. Entertainment Merchants Association*, 131 S. Ct. 2729 (2011)." *Id.* at 34-35. He argues that the Supreme Court ruled that "television and video games are protected speech under the First Amendment as are other forms of media." *Id.* at 35. Citing *Buckley v. Valeo*, 424 U.S. 1 (1976), the Plaintiff argues that he enjoys freedom of speech and states that he was deprived of that freedom due to his tongue injuries caused by the Defendants. *Id.*

### 15.   The 42 U.S.C. § 1985(3) Claim

The Plaintiff asserts a viable § 1985(3) claim "on the basis of his status as a member of a protected class of temporarily disabled, color, race, and perceived ethnicity." *Id.* He describes students driving by his residence yelling racial epithets

25

and waving Confederate flags. *Id.* He also points to the alleged actions of Mr. Pride in recruiting students to harass him. *Id.*

### 16.    The Maine Civil Rights Act Claim

The Plaintiff asserts that his rights under the Maine Constitution are greater than the rights provided under the United States Constitution. *Id.* at 36 (citing *State v. Rees*, 2000 ME 55, 748 A.2d 976). The Plaintiff argues that the Defendants' references to this Court's lack of jurisdiction are too vague and that by moving to dismiss only under Federal Rule of Civil Procedure 12(b)(6), the Defendants have waived other jurisdictional arguments. *Id.*

### 17.    The Maine Human Rights Act Claim

In response to the failure to exhaust remedies issue, the Plaintiff asserts that he filed a Maine Human Rights Act claim with the Maine Human Rights Commission against Ms. Ernst. *Id.* at 37. In fact, he claims that Ms. Ernst's conduct "horrified" the Maine Human Rights Commission and it described her actions as "cold" to the Plaintiff. *Id.*

The Plaintiff decries the Defendants' assertion that he failed to exhaust administrative remedies by filing with the Maine Human Rights Commission, saying that he sought to minimize litigation. *Id.* He contends that defense counsel for the Defendants in this case "failed to ask Cheryl McAlister at the Maine Human Rights Commission on whether the Plaintiffs ever filed a complaint to the Maine Human Rights Commission during 2014." *Id.* He accuses defense counsel of making "false contentions," which were publicized in the media. *Id.* He also says that as he was a

minor, the legal doctrine of tolling pursuant to 5 M.R.S. § 4611 applied to him and gave him 300 days after he reached his majority. *Id.* The Plaintiff reasserts his earlier jurisdictional arguments. *Id.* at 38.

### 18.   A Private Cause of Action for Bullying and Harassing

Citing *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), the Plaintiff argues that the United States Supreme Court has "determined that a private right of action could lie against a school board in instances of student-on-student bullying, hazing, or harassment." *Id.* He also claims that the *Bivens* case allows him to bring a lawsuit for bullying and harassing. *Id.* He reiterates the earlier jurisdictional arguments. *Id.* at 40.

### 19.   The Maine Constitutional Claims

The Plaintiff reiterates his view that the Maine Constitution provides for greater rights than the United States Constitution and urges the Court not to dismiss the claims based on alleged violations of the Maine Constitution. *Id.* at 40-41.

### 20.   Qualified Immunity

The Plaintiff reargues his contentions regarding the various constitutional rights that he contends were violated. *Id.* at 41-43. He cites a number of cases where the courts denied a motion to dismiss based on qualified immunity grounds. *Id.* at 43-44.

### 21.   The Eleventh Amendment

Citing caselaw, the Plaintiff maintains that his claims for equitable relief are not barred by the Eleventh Amendment. *Id.* at 44.

### 22.    The Seventh Amendment

Finally, the Plaintiff argues that the Seventh Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment and that his Seventh Amendment claim should not be dismissed.  *Id.*

### C.    The Defendants' Reply

In their reply, the Defendants say that this "case is about an unfortunate ski accident—nothing more."  *Defs.' Reply* at 1.

First, the Defendants object to the Court's consideration of new facts set forth in the Plaintiff's opposition memorandum.  *Id.* at 1-2.

Second, the Defendants reiterate the earlier-expressed view that the Plaintiff's lawsuit must fail against the Entity Defendants because the Plaintiff failed to allege that "the Entity Defendants had a policy or custom which is violative of their constitutional rights, a failure that is fatal to their Section 1983 claim."  *Id.* at 2. More specifically, the Defendants dismiss the claim that there is a constitutional right to wear sunglasses, *id.*, or a constitutional right to play videogames or watch television.  *Id.* at 2 n.2.  The Defendants say that "[t]he mere fact that the Entity Defendants had a policy with which the Plaintiffs disagree, or lack policies for which the Plaintiffs themselves believe should have been adopted, does not give rise to a Section 1983 or constitutional claim."  *Id.*

Third, the Defendants say that the Plaintiff has failed to plead any claims against Mr. Roberts, Mr. Hoyt, Mr. Collins and Ms. Carter.  *Id.* at 3.  They contend that the Court should not consider the new facts in the Plaintiff's memorandum and,

even if it did, the allegations in the Amended Complaint and the memorandum do not state a claim upon which relief may be granted.  *Id.*

Fourth, turning to the Maine Civil Rights Act, the Defendants disagree with the Plaintiff's argument that the Maine Civil Rights Act accords greater rights than are available under federal law.  *Id.* at 3-4.  They also reject the Plaintiff's claim that *State v. Rees* stands for the proposition that the Maine Constitution is generally a source of greater rights than the United States Constitution.  *Id.* at 4.

Fifth, regarding the Maine Human Rights Act claim, the Defendants contend that even if the Plaintiff contacted the Maine Human Rights Commission, he has not demonstrated that he actually filed a complaint with the Commission and therefore his Maine Human Rights Act claim is barred.  *Id.* at 4.  The Defendants also reject the proposition that the 300-day time limit is tolled during the period of HNBV's minority.  *Id.*

Sixth, the Defendants dispute the Plaintiff's contention that *Davis v. Monroe County* is applicable to the question of whether the Maine statutes against bullying and hazing provide for a private cause of action.  *Id.* at 5.

Seventh, the Defendants reiterate their view that the Plaintiff's state law claims should all be dismissed once the federal claims are dismissed.  *Id.* at 6.

## IV.   DISCUSSION

### A.   Standard of Review

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a court must

determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." *Ocasio–Hernández v. Fortuño–Burset,* 640 F.3d 1, 7 (1st Cir. 2011) (citing FED. R. CIV. P. 12(b)(6)). A court need not assume the truth of conclusory allegations, and the complaint must state at least a "plausible claim for relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). However, "[n]on-conclusory factual allegations in the complaint must . . . be treated as true, even if seemingly incredible." *Ocasio–Hernández,* 640 F.3d at 12. A court may not "attempt to forecast a plaintiff's likelihood of success on the merits." *Id.* at 12-13.

In 2007, the United States Supreme Court issued *Twombly*, which emphasized the need for a plaintiff's complaint to marshal sufficient facts to demonstrate a "plausible entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007). It is noteworthy that *Twombly* is an antitrust case in which the plaintiff claimed a violation of § 1 of the Sherman Act. *Id.* at 548. In stressing the need for plausibility, the *Twombly* Court observed that an antitrust action "can be expensive," *id.* at 558, and the Supreme Court worried that "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching" the summary judgment or trial stages. *Id.* at 559.

Two years later, in *Iqbal*, the United States Supreme Court refined the dismissal standard:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff

30

> pleads factual content that allows the court to draw the reasonable
> inference that the defendant is liable for the misconduct alleged.

556 U.S. at 678 (internal quotation marks and citations omitted).  The *Iqbal* Court suggested that courts when considering motions to dismiss could "choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679.  Having isolated "the well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*

In his opposition, the Plaintiff argues that *Iqbal* is restricted to *Bivens* actions and is not applicable to a civil rights claim.  *Pl.'s Opp'n* at 17.  He is wrong.  In 2013, the First Circuit described the *Twombly* and *Iqbal* decisions as "watershed cases." *García-Catalán v. United States*, 734 F.3d 100, 101 (1st Cir. 2013).  The "plausibility standard," the First Circuit wrote, has become "the 'new normal' in federal civil practice."  *Id.* (quoting *A.G. v. Elsevier, Inc.*, 732 F.3d 77, 78-79 (1st Cir. 2013)).  The First Circuit explained that "[t]he plausibility inquiry necessitates a two-step pavane."  *Id.* at 103 (citing *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013)).  "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'"  *Id.* (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)).  "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678)).

31

### B.    Pro Se Status of Plaintiff

The Plaintiff is representing himself in this lawsuit.  The First Circuit has written that "as a general rule, we are solicitous of the obstacles that pro se litigants face, and while such litigants are not exempt from procedural rules, we hold pro se pleadings to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects." *Dutil v. Murphy*, 550 F.3d 154, 158-59 (1st Cir. 2008); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (pro se complaints are to be "liberally construed"). Even so, "pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).

### C.    Additional Facts

The Defendants are correct that a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) "serves to provide a mechanism to test the sufficiency of the complaint." *Godin v. Schencks*, 629 F.3d 79, 89 (1st Cir. 2010).  In general, if matters outside the pleadings "are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d).  Here, in his responsive memorandum, the Plaintiff presented over thirteen pages of "additional facts." *Pl.'s Opp'n* at 2-15.

In analyzing this motion, however, the Court has focused on the facts alleged in the Amended Complaint; the Amended Complaint contains seventeen single-spaced paragraphs of factual allegations and therefore describes in detail the essence of the Plaintiff's factual contentions. *Am. Compl.* ¶¶ 18-34-A.  In limiting its

32

discussion to the facts in the Amended Complaint, the Court is mindful of the First Circuit's admonition in *Foley v. Wells Fargo Bank*, *N.A.*, 772 F.3d 63 (1st Cir. 2014) that a Rule 12(b)(6) analysis must "start and end with the pleadings." *Id.* at 73.

It is true that some district courts in the First Circuit have, when considering dispositive motions, permitted pro se plaintiffs to submit additional facts after the complaint was filed.  *See e.g., Hernandez v. Ashe*, 745 F. Supp. 2d 15, 20 (D. Mass. 2010) (allowing pro se plaintiff to rely on additional facts "[e]ven though these assertions do not precisely conform to the summary judgment rules"); *Potter v. Ledesma*, No. CIVIL 07-1060 (SEC), 2009 WL 1767659, at *4 (D.P.R. June 19, 2009) (permitting pro se plaintiff "to amend his claim in order to . . . plead additional facts" in opposition to a motion to dismiss); *Davis v. United States*, No. 77-3607-K, 1980 WL 1683, at *2 (D. Mass. Sept. 26, 1980) (granting motion to dismiss pending the outcome of a conference to allow a "pro se plaintiff an opportunity to allege additional facts that might be sufficient to state a cause of action with respect to at least one of the many grounds referred to, though insufficiently alleged, in the original complaint").

However, these cases predate *Foley*.  In *Foley*, the First Circuit addressed on appeal a dismissal of a pro se complaint in which the district court had considered a document outside the pleadings and reinforced the principle that in ruling on a motion to dismiss, a court may consider "only the complaint, documents attached to it, and documents expressly incorporated into it." *Foley*, 772 F.3d at 71-72.  The *Foley* Court held that the district court's consideration of this document effectively converted the motion to dismiss into a motion for summary judgment.  As such, in

the Court's view, to consider the extensive factual allegations in the Plaintiff's response would run afoul of *Foley*.

At the same time, virtually all of the additional facts in the Plaintiff's responsive memorandum are generally consistent with the allegations in the Amended Complaint, and considering the pro se status of the Plaintiff, the Court reviewed the additional factual allegations in the Plaintiff's responsive memorandum and has concluded that even if these additional allegations were part of the Amended Complaint, the Court would still grant the motion to dismiss for the same reasons discussed in this Order. For this reason, the Court has not converted the motion to dismiss into a motion for summary judgment under Rule 12(d) because to do so would be futile. Instead, the Court has limited itself to the allegations in the Amended Complaint and accepted "as true all the factual allegations in the complaint," construing "all reasonable inferences in favor of the plaintiff." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009).

The Court also observes that most of the additional facts in the Plaintiff's responsive memorandum are generally consistent with the allegations in the Amended Complaint and the Court is cognizant of the First Circuit's observation that it is appropriate to dismiss a pro se complaint "only if [he] cannot prove any set of facts entitling [him] to relief." *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 255 (1st Cir. 1994).

**D.    The Service of Process Counts 12 and 13**

34

The Amended Complaint contains two counts alleging constitutional violations arising out of the Defendants' alleged refusal to accept service of the summonses without cause. *Am. Compl.* ¶¶ 47-A, 47-B. The court docket reveals that the Plaintiff filed the original Complaint in this Court on April 21, 2015. *Compl.* (ECF No. 1). On April 28, 2015, the Plaintiff filed a motion to amend the complaint together with a proposed amended complaint; on May 1, 2015, the Court granted the motion to amend complaint. *Mot. to Am. Compl.* (ECF No. 10); *Order Granting Mot. to Am. Compl.* (ECF No. 11). On May 5, 2015, the Defendants filed duly executed waiver of service forms. *See Waiver of Serv.* (ECF No. 13). On May 11, 2015, the Plaintiff filed the Amended Complaint. *Am. Compl.*

"[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Woodford v. Ngo*, 548 U.S. 81, 122 (2006) (quoting *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983)). All citizens have "a reasonably adequate opportunity to raise constitutional claims before impartial judges." *Id.* (citing *Lewis*, 518 U.S. at 351).

Under Federal Rule of Civil Procedure 4(d), "[a]n individual, corporation or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons." FED. R. CIV. P. 4(d)(1). Rule 4(d) establishes a process by which a plaintiff notifies a defendant that he intends to bring suit and requests that the defendant waive service of the summons. FED. R. CIV. P. 4(d). The notice must contain certain information. *Id.* 4(d)(1)(A)-(G). Critically, the

plaintiff must give the defendant "a reasonable time of at least 30 days after the request was sent . . . to return the waiver." *Id.* 4(d)(1)(F).

Rule 4(d)(2) addresses a defendant's failure to waive service:

(2) If a defendant located in the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant:

    (A) the expenses later incurred in making service; and

    (B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses.

*Id.* 4(d)(2)(A)-(B).

In Counts 13 and 14, the Plaintiff makes the novel claim that a defendant's refusal without good cause to sign and return a waiver violates his constitutional right to access to the courts. *Am. Compl.* In his memorandum, the Plaintiff cites seventeen cases, including *Marbury v. Madison*, 5 U.S. 137 (1803), that he claims support the proposition that "the refusal of service by Mr. Pride and Mr. Desaulniers constituted 'actual injury' in part because it was done in bad faith, which created unnecessary service expenses of hiring the Knox County Sheriff's department to serve the Defendants, in breach of the 1st Amendment and Article 1 § 19 of the Constitution of the State of Maine." *Pl.'s Opp'n* at 34. The Court reviewed each cited case and found no support for the Plaintiff's contention.[5] The Court notes that Congress added

---

[5]     The Plaintiff cites each case generally without pointing to a particular page, making it difficult for the Court to locate within each case the authority that the Plaintiff contends is there.

    The Plaintiff also cites Ephesians 4:31. *Pl.'s Opp'n* at 34. This biblical passage reads: "Let all bitterness, and wrath, and anger, and clamour, and evil speaking, be put away from you, with all malice." *Ephesians* 4:31 (King James). The biblical citation does not have any bearing on whether the Defendants should have accepted service of process by mail.

the waiver provision to Rule 4 in 1983.  *See* FED. R. CIV. P. 4, advisory committee note to 1993 amendment.  Therefore eleven of the seventeen cases, which were decided before 1983, could not possibly have addressed whether the refusal to accept a waiver of service constituted a violation of the right to access to the courts because the waiver provision did not exist.

Here, the Defendants would not be held to have refused to waive service of the summons because on May 5, 2015, each named Defendant filed such a waiver with the Court.  *See Waiver of Serv.* (ECF No. 13).  Thus, each Defendant returned an executed waiver of service within the thirty day response period specified in Rule 4(d)(1)(F).  It may be, as the Plaintiff appears to be claiming, that one or more of the Defendants initially declined to accept the waiver notification, but it also appears that they thought the better of it and filed an executed waiver within the thirty-day period the Rule requires.

Moreover, Rule 4(d)(2) sets forth the potential sanction for failure to waive service of process.  As the Civil Rules Advisory Committee noted, "[t]he rule operates to impose upon the defendant those costs that could have been avoided if the defendant had cooperated reasonably in the manner prescribed."  FED. R. CIV. P. 4, advisory committee note to 1993 amendment.  Therefore, if the Defendants here violated their "duty to avoid unnecessary expenses," (a conclusion that does not appear warranted), Rule 4(d)(2) prescribes the sanction.

Finally, the Plaintiff in this case is not in a position to argue that the Defendants were effective in denying him access to the courts, because the Plaintiff

successfully filed suit and completed service by waiver within the time prescribed by Rule 4.

In short, the Court finds no basis in law or fact for the allegations in Counts 12 and 13 and grants the motion to dismiss each count.

### E.    The Section 1983 Claims: A Factual Overview

Reviewing the facts alleged in the Amended Complaint, the Court concludes that although the Plaintiff may (or may not) have a tort action against the school district, he does not have a civil rights action against the school district.  The Court understands why the circumstances of the skiing accident were highly upsetting to the Plaintiff and his mother, but the facts simply do not justify a civil rights complaint.

#### 1.    Events before the Sugarloaf Accident

The Plaintiff alleges that his mother wrote to the school and asked that HNBV be kept "off the dangerous ski trails."  *Am. Compl.* ¶ 19.  In addition, by implication, HNBV was not wearing a ski helmet at the time of the accident.  *See id.* ¶ 36(a) ("safety and the use of safety equipment including, but not limited to safety helmets and mouth guards while skiing").

#### 2.    The Accident

While skiing at Sugarloaf Mountain, the Amended Complaint alleges that HNBV "sustained multiple injuries . . . including a concussion, which caused HNBV to defecate and go unconscious.  At least three teeth were chipped, and one dislocated."  *Id.* ¶ 19.

### 3. The Sugarloaf Mountain Ski Clinic

Once at the Sugarloaf Ski Clinic, the Amended Complaint says that HNBV stated that he did not want to go in an ambulance. *Id.* ¶ 20.

### 4. The Ambulance Ride to the Hospital

Again, by implication, the Amended Complaint alleges that HNBV was placed in an ambulance and taken to a hospital. *Id.* ¶¶ 20-21.

### 5. The Hospital

The Amended Complaint says that HNBV "sustained loss of consciousness and fecal matter, a contusion to the chest and back, dental trauma: tooth subluxation, a hematoma to the scalp and back, a puncture wound (tongue), profuse bleeding from mouth," that he was "wrongfully left in his own excrement for hours," and that he "had a number of x-rays and CT scans." *Id.* ¶ 22.

### 6. Injuries after the Accident at Oceanside

The Amended Complaint alleges a series of injuries for which HNBV is claiming damages: (1) dental problems, including a dislocated tooth, chipped teeth, and the loss of tooth enamel, resulting in difficulty eating solid food, hypersensitivity, and the need for dental implants to prevent further injury; (2) tongue problems caused by the imbedding of a chipped tooth into his tongue and requiring tongue surgery to remove the chip; (3) hypersensitivity in his left eye made worse whenever he is exposed to bright light; and (4) the need to walk with a cane for some period of time. *Id.* ¶¶ 23-31.

### 7. The Handicapped Entrance

In addition, the Amended Complaint alleges that on January 31, 2014, Elaine Ernst, a morning hall monitor, refused to allow HNBV to use a handicapped entrance, requiring HNBV to use the front door where he was at risk from the crowd of students entering the school. *Id.* ¶ 29.

### 8.    Harassment and Bullying

Finally, the Amended Complaint alleges a pattern of harassment and bullying of HNBV after his accident by the faculty and students at Oceanside. *Id.* ¶ 32. The students, HNBV claims, offensively embraced him, squeezed his neck from behind, attacked him with a lacrosse stick, hit him with a yard stick, flashed bright lights in his eyes, and drove by his house shouting racial epithets and making excessive noise. *Id.* He also alleges that Kenneth Pride recruited students to abuse HNBV and that Mr. Pride attempted to assault HNBV with tennis balls. *Id.*

### F.    The § 1983 Claims Against the Entity Defendants

Section 1983 provides in part that:

> [e]very person who, under color of any . . . custom or usage, of any State . . . subjects, or caused to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. Thus, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). If a § 1983 complaint fails to

state a constitutional claim, it is subject to dismissal under Rule 12(b)(6). *Doe v. Metropolitan Police Dep't*, 445 F.3d 460, 467 (D.C. Cir. 2006).

Here, despite the Plaintiff's attempt to frame a constitutional violation, the Court can find no constitutionally-recognized right that has been affected by his unfortunate skiing accident and its sequelae. For example, in his Amended Complaint, the Plaintiff claims that the Fourth Amendment's protection against the use of excessive force applies to his being restrained, but the Amended Complaint fails to clarify who restrained him. *Am. Compl.* ¶ 35. The closest allegation in the Amended Complaint is Kenneth Pride's statement telling HNBV that he was going to go in the ambulance because Mr. Pride did not want to be sued. *Id.* ¶ 20. But, the Amended Complaint does not claim that the RSU 13 School Board or its Policy Committee placed HNBV on a board and skied him down the mountain to the clinic, that either entity took him by ambulance to the hospital, or that the hospital was somehow connected to the School Board or its Policy Committee. Nor does he claim (nor could he claim) that the ski patrol, ambulance company or hospital were following a policy or custom of RSU 13 when they performed their emergency and medical services for HNBV.

Furthermore, the Plaintiff's claim against the RSU 13 School Board and its Policy Committee constitutes a claim against public entities and as such, the scope of permissible legal action is limited. In *Oklahoma City v. Tuttle*, 471 U.S. 808, 828 (1985), the United States Supreme Court ruled that a municipality may not be held liable under § 1983 on the basis of a respondeat superior theory "for such liability

41

would violate the evident congressional intent to preclude municipal liability in cases in which the city itself was not at fault." *Id.*; *see also Monell*, 436 U.S. at 691; *Bowen v. City of Manchester*, 966 F.2d 13, 18 (1st Cir. 1992). A governmental entity may be held responsible "when the 'execution of the government's policy or custom . . . inflicts the injury.'" *Canton*, 489 U.S. at 385 (quoting *Monell*, 436 U.S. at 694). In addition, a municipality may be "held liable for constitutional violations arising from its failure to train employees." *Bowen*, 966 F.2d at 18.

As the Supreme Court has written, "not . . . every injury . . . translates into constitutional liability." *Farmer v. Brennan*. 511 U.S. 825, 834 (1994). Here, the Plaintiff has failed to identify any existing policy or failure to train that caused a constitutional violation. He asserted that the School Board and Policy Committee should have had policies concerning the use of skiing helmets, the procedure to follow when a student is injured, and the proper etiquette, but these policies relate to traditional tort concepts, not constitutional violations. Moreover, in order to attach liability, the Plaintiff must "point to a policy, not a violation of a policy, as the source of the constitutional violation." *Ms. K*, 407 F. Supp. 2d at 296. Here, the Plaintiff not only fails to point to an existing policy, but suggests policies that he contends that the Entity Defendants should have, but did not have that could have prevented the skiing accident or minimized his discomfort after the accident. This simply does not state a § 1983 claim against the Entity Defendants.

Similarly, for § 1983 liability to flow from a municipal custom, there must be an allegation of a municipal custom. The custom "must be attributable to the

municipality" and it must also "be so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989). Again, there is no allegation that anything like HNBV's accident or injuries had happened previously at RSU 13 and that, despite actual knowledge, the Entity Defendants ignored the unconstitutional practice or failed to end it. *Ms. K*, 407 F. Supp. 2d at 297 ("Absent any showing or previous harm arising from this training policy, or any evidence of deliberation on the school department's party, Plaintiff fails to demonstrate . . . [that] the Defendants actually chose a policy with deliberate indifference toward [plaintiff]").

In short, there is no viable § 1983 claim against the Entity Defendants.

### G. The § 1983 Claim Against the Defendants in Their Official Capacities

The same logic that applies to the Entity Defendants applies to the Defendants who the Plaintiff charges with violating his constitutional rights. In the absence of an existing policy or custom, there can be no § 1983 claim against the individual defendants for following an unconstitutional policy or custom. There is no viable § 1983 claim against the individual defendants acting in their official capacities.

### H. The § 1983 Claims Against Defendants Roberts, Hoyt, Collins and Carter as Individuals

The Amended Complaint lists the following individual Defendants: (1) Steve Roberts, Chair of the RSU 13 Board, (2) Sherman Hoyt, Chair of the RSU 13 Policy Committee, (3) Lewis Collins, Superintendent of RSU 13, and (4) Ilmi Carter, a school

nurse.  *Am. Compl.* ¶¶ 11, 14-16.  Other than listing each of these individuals as Defendants, the Amended Complaint does not mention any of them again.  There is no basis, therefore, to maintain a lawsuit against any of these individuals since there are no allegations of wrongdoing directed against any of them.

## I.   The § 1983 Claims Against Defendants Pride, Desaulneris, and Ernst

The Amended Complaint contains specific allegations against Kenneth Pride, Paul Desaulniers, and Elaine Ernest.  *Id.* ¶¶ 12-13, 17.  The allegations against Kenneth Pride, a teacher and ski club coordinator, are: (1) that he arrived at the Sugarloaf ski clinic and touched HNBV with unclean hands, *Am. Compl.* ¶ 20, (2) that he told HNBV that he was to go in the ambulance because Mr. Pride did not want to be sued, *id.*, (3) that he attempted to assault HNBV with projectiles such as tennis balls, *id.* ¶ 32, and that he "has been recruiting high school students to offensively abuse the Plaintiff, HNBV, for the purpose of assessing the injuries and sensitivities to light and sound of the Plaintiff, HNBV."  *Id.*  The allegations against Paul Desaulneris, a science teacher and ski club coordinator, are (1) that he told HNBV to "stop being such a big baby," *id.* ¶ 21, and (2) that he humiliated HNBV by having him urinate in a prone position.  *Id.*  The allegation against Elaine Ernst, an Ed Tech, is that she refused to allow HNBV to use the handicapped entrance and required him to use the front door on January 31, 2014, to gain entry to Oceanside. *Id.* ¶ 29.

To maintain a substantive due process claim against these Defendants, HNBV must allege "conduct . . . so extreme as to 'shock the conscience.'"  *Cummings v.*

*McIntire*, 271 F.3d 341, 344 (1st Cir. 2001) (quoting *Cty of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998)).   The First Circuit observed that this standard was "deliberately . . set high to protect the Constitution from demotion to merely a 'font of tort law." *Id.* (quoting *Lewis*, 523 U.S. at 847 n.8, 848 (quoting *Daniels v. Williams*, 474 U.S. 327, 332 (1986))).   Merely negligent conduct is "categorically beneath the threshold of constitutional due process." *Marrero-Rodriguez v. Municipality of San Juan*, 677 F.3d 497, 501 (1st Cir. 2012) (quoting *Cummings*, 271 F.3d at 344). Examples of conduct that the First Circuit and other circuit courts have found that meet this high standard are, in this Court's view, markedly different in degree than what is alleged here. *Marrero-Rodriguez*, 677 F.3d at 502 (finding that a police officer who during a training exercise took out a firearm, placed it to the unprotected back of an unarmed prone officer, who was face down, motionless, under control, and unarmed, and shot the firearm, resulting in the officer's death had engaged in conduct shocking to the conscience); *Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1076 (11th Cir. 2000) (student blinded in one eye when teacher intentionally struck him with a metal weight); *Morris v. Dearborne*, 181 F.3d 657, 668 (5th Cir. 1999) (teacher fabricated sexual abuse charges against a father causing loss of contact with his child for three years); *Rogers v. City of Little Rock*, 152 F.3d 790, 797 (8th Cir. 1998) (rape by police officer in connection with a car stop).   Similarly, examples of conduct not meeting the standard are on their face more egregious than the conduct here. *Kennedy v. Town of Billerica*, 617 F.3d 520, 540 (1st Cir. 2010) ("Officer Parker kicked [the plaintiff's] car repeatedly and swore and screamed at her for several minutes");

45

*Cummings*, 271 F.3d at 343 (police officer directing traffic when approached by a pedestrian violently shoved the pedestrian causing permanent back and leg injuries).

HNBV's allegations against these defendants simply do not rise to the "brutal" or "inhumane" conduct required to reach constitutional dimensions. *Lockhart-Bembery v. Sauro*, 498 F.3d 69, 78 (1st Cir. 2007). The allegations against Mr. Desaulneris and Ms. Ernst do not begin to meet this test. The allegations against Mr. Pride, particularly the allegation that he recruited students to test the extent of HNBV's injuries, comes closer. Certainly offensive embraces, neck squeezing, and whacking with a lacrosse stick, especially when part of a campaign directed by Mr. Price, may have been "reprehensible," *Kennedy*, 617 F.3d at 540, but it is still, in this Court's view, not the type of brutal or inhumane conduct that the law requires for a substantive due process claim. *Gomes v. Univ. of Me. Sys.*, 304 F. Supp. 2d 117, 124 (D. Me. 2004) ("'Conscience shocking' behavior in the education context has usually involved physical or sexual abuse or excessive punishment").

HNBV maintains that he had the right to refuse medical treatment. *Am. Compl.* ¶ 36(b). He is correct as far as he goes. The law recognizes a "general liberty interest" in refusing medical treatment. *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990). However, a person's liberty interest must be balanced against the relevant state interests to determine whether a constitutional violation has occurred. *Id.* at 279. Here, HNBV has alleged an extremely significant ski injury, a collision so violent it caused him to lose "consciousness and fecal matter" and to chip and displace his teeth. *Am. Compl.* ¶ 22. The state had an obvious interest in making sure that

HNBV, a minor in the school district's care, had not sustained a catastrophic brain or spinal cord injury and, despite his protestations to be released, in bringing him promptly to a hospital where he could be thoroughly evaluated. The Court does not conclude that the period between the time he was retrieved by the ski patrol and the time he was seen at the hospital during which HNBV was tightly strapped to a board constitutes a violation of his liberty interest of constitutional magnitude.

### J.   The Procedural Due Process Claim

"The Due Process Clause of the Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.'" *Garcia-Gonzalez*, 761 F.3d at 88 (citing U.S. CONST. amend. XIV, § 1). "The 'root requirement' of the Due Process Clause" is that an individual must be provided notice and an opportunity to be heard prior to being 'deprived of any significant property interest.'" *Id.* (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (quoting *Boddie v. Conn.*, 401 U.S. 371, 379 (1971)). To maintain a procedural due process claim, a plaintiff must show that "(1) it was deprived of a protected property interest, and (2) the procedures attendant to that deprivation were constitutionally inadequate." *Id.* (quoting *Rocket Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1, 11 (1st Cir. 2013)). Here, the Amended Complaint does not identify a property interest that triggers the procedural Due Process Clause. It is not necessary to go further. *Redondo-Borges v. United States HUD*, 421 F.3d 1, 11 (1st Cir. 2005) ("Because the plaintiffs identify no constitutionally protected property interest, it is unnecessary to delve any deeper into the [§] 1983 inquiry").

### K.      The Fourth Amendment Claim

The Court addressed the Fourth Amendment claim in the context of HNBV's right to refuse medical treatment.  HNBV's right to be free from Fourth Amendment seizure follows the same logic.  *Graham*, 490 U.S. at 396 ("Determining whether the force used to effect a particular seizure requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake") (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).   "Excessive force claims are evaluated under the Fourth Amendment's 'objective reasonableness' standard." *McCue v. City of Bangor*, 1:14-cv-00098-GZS, 2015 U.S. Dist. LEXIS 127210, at *27 (D. Me. Sept. 22, 2015), *aff'd*. 2015 U.S. Dist. LEXIS 150773 (D. Me. Nov. 6, 2015) (citing *Graham*, 490 U.S. at 388). Again, for a school district to restrain a seriously injured student for a period long enough to obtain medical care and no longer is objectively reasonable.  Similarly, the Court is unable to fit the Plaintiff's claim that the absence of school policies constitutes a violation of his Fourth Amendment rights.

### L.      Other Alleged Constitutional Rights

In his Amended Complaint, HNBV claims that because he sustained traumatic injuries to his eyes, his tongue, and his ability to eat, his constitutional rights were violated. *Am. Compl.* ¶¶ 36, 38, 40.  From the Court's perspective, these claims are what the First Circuit had in mind when it warned against demoting the Constitution "to merely 'a font of tort law.'" *Cummings*, 271 F.3d at 344 (internal punctuation and citation omitted).

HNBV's unfortunate inability to speak due to injury is not, in this Court's view, a First Amendment question.  Properly viewed, an injury to the tongue from a skiing accident resonates in tort law, not constitutional law.  A similar analysis is applicable to HNBV's inability to watch television or play videogames.  Subject to the considerable hurdles placed before individuals filing a tort claim against a state entity, HNBV may be able to claim damages from these deprivations, but not in an action under § 1983.

### M.    The § 1985(3) Claim

Section 1985 of title 42 provides in part:

> If two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws . . .; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).  In order to make out a § 1985(3) claim, a plaintiff must prove that the conspiracy was motivated by some "racial, or perhaps otherwise class-based, invidiously discriminatory animus."  *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 30 (1st Cir. 2008) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993)).  Here, the Plaintiff makes no such claim; Count 7 reads:

> The Plaintiffs make a claim under Title 42 U.S.C. § 1985(3) because two or more of the Defendants interfered with the exercise and enjoyment of the civil rights of both Plaintiffs as described in the other counts of this complaint.

*Am. Compl.* ¶ 43.  Accordingly, the Plaintiff has failed to make out a § 1985(3) claim.[6]

### N.    The State Claims

In addition to his federal claims, the Plaintiff has brought a number of claims based on state law.  As the Court has determined that none of the federal law theories are viable, this leaves only the state law claims before the Court.  Here, the parties disagree fundamentally on a number of state law issues, including whether the Maine Human Rights Act claim is barred for failure to exhaust administrative remedies, whether Maine's bullying and hazing statutes provide for private causes of action, and whether the Maine Constitution provides for greater protections than the United States Constitution.

Where the federal claims have been dismissed and the remaining state claims present contentious issues of state law, the federal court typically dismisses the state law claims without prejudice to allow the plaintiff to proceed, if he chooses to do so, in state court.  28 U.S.C. § 1367(c)(3); *Rojas-Velàzquez v. Figueroa-Sancha*, 676 F.3d 206, 213 (1st Cir. 2012) ("Because the only federal claims in this suit were properly dismissed . . . [the plaintiff's] pendent claims were also appropriately dismissed"); *Flynn v. City of Boston*, 140 F.3d 42, 48 (1st Cir. 1998) ("[T]he better course is ordinarily to dismiss the state claims without prejudice and leave them to local

---

[6]       The Defendants also say that school boards, administrators, and school employees are not separate legal entities and a single legal entity cannot form a conspiracy with itself.  *Defs.' Mot.* at 16.  Known as the "intracorporate conspiracy doctrine," the First Circuit has "applied the doctrine in the context of § 1985, but only in limited circumstances."  *Air Sunshine, Inc. v. Carl*, 09-2019 (MEL), 09-2039 (MEL), 09-2041 (MEL), 2010 U.S. Dist. LEXIS 126238, at *37-38 (D.P.R. Nov. 30, 2010), *reversed on other grounds*, 663 F.3d 27 (1st Cir. 2011).  In *Stathos v. Bowden*, 728 F.2d 15, 21 (1st Cir. 1984), the First Circuit held that the intracorporate conspiracy doctrine did not apply where "defendants' activities . . . went beyond 'a single act' of discrimination."

courts"); *Franklin Mem. Hosp. v. Harvey*, Civ. No. 07-125-B-S, 2008 U.S. Dist. LEXIS 75532, at *40-41 (D. Me. Sept. 24, 2008), *affirmed* 2008 U.S. Dist. LEXIS 93001 (D. Me. Nov. 14, 2008); *Learnard v. Inhabitants of Van Buren*, 182 F. Supp. 2d 115, 127-28 (D. Me. 2002).

## V.  CONCLUSION

The Court GRANTS in part Defendants' Motion to Dismiss (ECF No. 16).  The Court GRANTS the motion to dismiss Counts 1 through 8 and Counts 12 and 13 of Plaintiffs' Amended Complaint insofar as each Count states a claim under federal law.  The Court DISMISSES without prejudice each Count to the extent each Count states a claim under state law.

SO ORDERED.

s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 24th day of February, 2016